# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| KIM BLANDINO, | ) | |
| Plaintiff, | ) ) | Case No.: 2:22-cv-00562-GMN-EJY |
| vs. | ) ) | **ORDER** |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

Pending before the Court is the Motion to Dismiss, (ECF No. 9), filed by Defendants Las Vegas Metropolitan Police Department and Joseph Lombardo (collectively, "Defendants"). *Pro se* Plaintiff Kim Blandino[1] ("Blandino" or "Plaintiff") filed a Response, (ECF No. 18), to which Defendants filed a Reply, (ECF No. 19).  For the reasons discussed below, the Court **GRANTS in part and DENIES in part** the Motion to Dismiss.

## I.        BACKGROUND

Blandino was placed under house arrest from as early as May 21, 2019, as a pre-trial detainee.  On or around March 9, 2022, Blandino was convicted in state court. (Compl. ¶ 18, ECF No. 1).  As part of his custodial sentence, Blandino continues to be placed on house arrest and high-level GPS monitoring, which requires Blandino to abide by a curfew from 6:00 pm to 6:00 am. (*Id.* ¶ 22).

In his Complaint, Blandino alleges that LVMPD and the Clark County Sheriff have engaged in a "continuing course of conduct and pattern of the violations of [Blandino's] civil rights," dating back to Blandino's very first arrest in 1979. (Compl. ¶¶ 8–9 ("[D]uring all of the

---

[1] In light of Plaintiff's status as a *pro se* litigant, the Court has liberally construed his filings, holding him to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

above incarcerations and in custody situations above[,] [Blandino has] made repeated complaints about civil rights violations to no avail[.]").  These complaints include, among other things, "being made to sleep on concrete floors with no mattress for up to 72 hours;" "given meals yet denied a toothbrush;" "denied access to [writing materials and mailings]" while incarcerated; and being "wrongfully put into solitary confinement" in retaliation for Blandino "asserting his rights[.]" (*Id.* ¶ 9).

Blandino additionally details an incident dating back to May 21, 2019, when he was arrested and taken to Clark County Detention Center ("CCDC").  He alleges that LVMPD wrongfully retaliated against him after he "objected when an officer tried to force [Blandino] to stick a DNA 'collector' into [Blandino's] mouth[.]" (*Id.* ¶ 12).  Because he initially refused to permit the officer to collect a DNA sample, Blandino alleges he was "stripped of [his] clothes, put in a super cold punishment cell and given 'single use' Styrofoam dinner plates" until he was taken to court on May 24, 2019. (*Id.* ¶ 13).  During the period that he was in solitary confinement, Blandino argues that he was denied his legal mailing, and had his "legal mail destroyed by an LVMPD employee[.]" (*Id.*).

Blandino also details an incident on or around January 3, 2020, when he was remanded to CCDC for a competency review. (Compl. ¶ 37).  While at CCDC, Blandino alleges he was "sent to solitary confinement" and, among other things, "denied the right to order reading glasses" as punishment for Blandino filing a federal lawsuit against CCDC officials. (*Id.* ¶ 39).  Blandino further contends that he was "punished by having all of [his] writing implements taken from him while in solitary confinement," and was denied "the right to [send] legal mailing out and to receive legal mail," resulting in a "dismissal of [Blandino's] appeal to the Ninth Circuit Court of Appeals." (*Id.* ¶ 40).

Additionally, Blandino alleges that, due to his house arrest and high-level monitoring, he is being "denied his religious practice" which requires Blandino "to live[,] move and have his

being according to faith in each moment." (Compl. ¶ 20).  Specifically, Blandino argues he was "moved by his Creator" to go out to dinner with his two sons and roommate after his curfew but was denied this opportunity, in violation of his religious beliefs. (*Id.* ¶ 21).  Blandino further alleges he will "suffer irreparable injury" if not permitted to take his roommate "out on excursions" as part of his religious practice. (*Id.*).

Finally, Blandino argues that he is under severe distress because he has received warnings via text messages that he was breaking his curfew despite being inside his home. (*Id.* ¶¶ 47–49).  Because of these texts accusing him of violating his curfew, Blandino alleges he "is suffering greatly under extreme distress" that Defendants will again detain him and force him into solitary confinement. (*Id.* ¶ 50–51).  Blandino thus asserts the following causes of action: (1) violation of the First Amendment Free Exercise clause; (2) violation of the Eighth Amendment; (3) unlawful retaliation; and (4) *Monell* liability under 42 U.S.C. § 1983. (*See generally* Compl.).  Defendants now move to dismiss.  Although Blandino filed a response to the Motion to Dismiss, he does not refute the arguments raised by Defendants, but instead requests that the Court give him "an opportunity to amend the complaint." (Resp., ECF No. 18).

**II.**          **LEGAL STANDARD**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6)) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

If a court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.        **DISCUSSION**

In the Motion to Dismiss, Defendants first argue that Defendant Joseph Lombardo should be dismissed because Blandino cannot plausibly allege that Lombardo may be held liable for any of Blandino's claims either in his official capacity, under vicarious (supervisory) liability, or as an individual. Defendants additionally argue that: (1) the Complaint fails to state a claim upon which relief may be granted; and (2) most of Blandino's claims are time-barred. The Court considers each argument in turn.

### A.        **Defendant Joseph Lombardo**

Defendants contend that all claims against Joseph Lombardo, Governor of Nevada, and former Clark County Sheriff, should be dismissed because Blandino cannot plausibly allege that Lombardo may be held liable for any of Blandino's claims.

Blandino sues Lombardo in his individual and official capacities. (Compl. ¶ 7). But Blandino fails to allege facts indicating that Lombardo was personally involved in the events

giving rise to Blandino's causes of action.  Instead, Blandino contends only that LVMPD and Lombardo are engaged in "a continuing course of conduct and pattern of the violations of [Blandino's] civil rights," (*see* Compl. ¶ 8), and that "rather than take true corrective action such as vigorous training and updated policies including zero tolerance policies for violations of civil rights," LVMPD and Lombardo "have made the deliberate calculation that lawsuits and settlements after the fact are a 'cost of doing business.'" (Compl. ¶ 11).

"There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985).  Because Blandino names LVMPD as a defendant in this action, and because Blandino fails to ascertain facts that show Lombardo was personally involved in the events giving rise to this lawsuit, the Court DISMISSES Plaintiff's claim against Lombardo.

### B.      Free Exercise Clause

The First Amendment to the United States Constitution provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" Prisoners retain their First Amendment rights, including the right to free exercise of religion, while they are incarcerated. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  "In general, a plaintiff will have a stated a free exercise claim if: (1) 'the claimant's proffered belief [is] sincerely held; and (2) 'the claim [is] rooted in religious belief, not in purely secular philosophical concerns.'" *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015).  An inmate's "limitation on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.*  To state a cognizable claim under the Free Exercise Clause, a plaintiff must allege facts showing that the defendant substantially burdened the practice of ///

plaintiff's religion without any justification reasonably related to legitimate penological interests. *See O'Lone*, 482 U.S. at 348–49 (citing *Turner v. Safley*, 482 U.S. 78 (1987)).

Blandino alleges that Defendants violated his First Amendment rights because his curfew prohibits him from moving freely.  Specifically, Blandino argues that he was unable to join his children and roommate for dinner, despite being "moved by his Creator" to do so, and that he will suffer continuous, irreparable injury if he is not permitted to take his roommate "out on excursions" as part of his religious practice. (Compl. ¶¶ 20–21).  Defendants argue, among other things, that Blandino may continue to practice his religion outside of his curfew, and that his curfew is reasonably related to legitimate penological interests because Plaintiff is a "convicted prisoner on house arrest" and Defendants "ha[ve] an interest in ensuring [Blandino] abide[s] by the terms of his conviction." (Motion to Dismiss ("MTD") 11:17–20).

Here, Blandino has failed to show how his house arrest has denied him all means of religious expression. *See, e.g.*, *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1993) (holding that the court must "determine whether the inmates have been denied all means of religious expression.").  Indeed, as Defendants argue, Blandino may continue his excursions with his roommate between the hours of 6:00 a.m. and 6:00 p.m., when he is not otherwise subject to his curfew.  Because the Court finds that his curfew is reasonably related to legitimate penological interests, Plaintiff's Free Exercise claim is DISMISSED without prejudice.

## C.   Eighth Amendment: Cruel and Unusual Punishment

"The Eighth Amendment prohibits cruel and unusual punishment in penal institutions." *Wood v. Beauclair*, 692 F.3d 1041, 1045 (9th Cir. 2012).  Whether a specific act constitutes a cruel and unusual punishment is measured by "the evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  When evaluating a prisoner's claim, courts consider whether "the officials act[ed] with a sufficiently culpable

///

state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.*

An institution's obligation under the Eighth Amendment ends when it furnishes inmates with adequate food, clothing, sanitation, medical care, and personal safety. *Wright v. Rushen*, 642 F.2d 1129, 1132–33 (9th Cir. 1981) (citation omitted). Moreover, "[a]n Eighth Amendment claim that a prison official has deprived inmates of humane conditions must meet two requirements, one objective and one subjective." *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (citation and quotation marks omitted). "Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities. The subjective requirement, relating the defendant's state of mind, requires deliberate indifference." *Id.* at 1133 (citation and quotation marks omitted). Furthermore, a prisoner's alleged Eighth Amendment violation requires an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 351–52 (1996). "A prisoner claiming an Eighth Amendment violation must show (1) that the deprivation he suffered was 'objectively, sufficiently serious;' and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place." *Morgan v. Morgenson*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Construing Blandino's claims liberally, the Court interprets the following events as the basis for Blandino's cruel and unusual punishment claim: (1) sleeping on the ground without a mattress for approximately 72 hours while in a booking cell; (2) being denied access to a toothbrush; (3) being denied access to writing instruments; (4) being denied access to any mailings while in solitary confinement; (5) being placed in solitary confinement on or around May 21, 2019, through May 23, 2019; (6) being placed in solitary confinement on or around January 6, 2020; and (7) being placed under extreme distress due to his high-level monitoring. (*See generally* Compl.). Taking these allegations as true and in the light most favorable to

Blandino, the Court finds that Blandino fails to sufficiently allege a cruel and unusual punishment claim.

Blandino's claims that he was forced to sleep on the ground, denied access to a toothbrush and writing instruments, denied access to his mail while in solitary confinement, and placed under extreme distress due to his GPS monitoring, cannot plausibly serve as the basis for an Eighth Amendment violation. Specifically, none of these incidents meet the objective requirement that "the prison official's acts or omissions [] deprive an inmate of the minimal civilized measure of life's necessities." *Lopez*, 203 F.3d at 1132. Moreover, an Eighth Amendment claim requires "actual injury." *See, e.g.*, 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); *Oliver v. Keller*, 2989 F.3d 623, 627 (9th Cir. 2002) (noting that 42 U.S.C. § 1997e(e) "requires a prior showing of physical injury that need not be significant but must be more than de minimis"). Blandino does not allege any physical injury.

Blandino further fails to allege an Eighth Amendment violation regarding his placement in solitary confinement. Solitary confinement is not *per se* a violation of the Eighth Amendment. *See, e.g.*, *G.H. by and through Henry v. Marstiller*, 424 F.Supp.3d 1109, 1114 (N.D. Fla. 2019) ("[W]hile solitary confinement does not, in and of itself, constitute cruel and unusual punishment, confinement in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards.") (cleaned up) (citing *Quintanilla v. Bryson*, 730 F.App'x. 738, 746 (11th Cir. 2018)); *Dockery v. Hall*, 444 F.Supp.3d 726, 743 (S.D. Miss. 2019) ("Although solitary confinement does not *per se* violate the Eighth Amendment, 'there is a line where [its] conditions [can] become so severe that its use is converted from a viable prisoner disciplinary tool to cruel and unusual punishment.'") (quoting *Gates v. Collier*, 501 F.2d 1291, 1304 (5th Cir. 1974)). Blandino does not challenge the overall conditions of

solitary confinement.  Having reviewed the Complaint, the Court finds that Blandino fails to please enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570.  Accordingly, the Court DISMISSES Plaintiff's Eighth Amendment claim without prejudice.

### D.      Unlawful Retaliation

Blandino argues that he was "retaliated against for exercising his right to free speech[.]" (Compl. ¶ 53).  Specifically, Blandino's retaliation cause of action stems from incidents in or around January 2020 and April 2020 when he was remanded to CCDC for a competency review.  Blandino notes that he "spoke to irrational behavior on the part of various officers and/or nurses" and he was "specifically put in solitary confinement on the January 2020 incident" and "locked down to his cell after merely telling a nurse that she was impatient and rude" in April 2020. (Compl. ¶ 55).

To demonstrate retaliation in violation of the First Amendment in the prison context, a plaintiff must show "(1) an assertion that a state actor took some adverse action against an inmate, (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005)).  Construing the Complaint liberally, the Court finds that Plaintiff sufficiently pleads facts that give rise to a First Amendment retaliation claim.  Blandino engaged in protected activity when he expressed his frustrations about "irrational behavior" by prison officials. *See Brodheim*, 584 F.3d at 1271 (noting that "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment").  He alleges that speaking up resulted in him being placed in solitary confinement.  Although Blandino does not elicit facts alleging that such action chilled his speech, the Ninth Circuit has held that "an objective standard governs the chilling inquiry; a

plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill *or* silence a person of ordinary firmness from future First Amendment activities." *Id.* (quoting *Rhodes*, 408 F.3d at 568–69) (emphasis in original). A reasonable person may be chilled if they believed that exercising their First Amendment rights might subject them to solitary confinement.  Finally, Blandino argues that the retaliation was "merely because" of Blandino's comments against prison officials.  Based on these facts, the Court finds that Blandino has sufficiently pled his First Amendment retaliation claim, unless otherwise time barred. *See infra* 11:4–12:16.

### E.   *Monell* **Liability**

Municipalities, government agents, or policymaking individuals may be held liable under § 1983 for constitutional deprivations pursuant to governmental custom. *Monell v. Dep't. of Social Services*, 436 U.S. 658, 690 (1978).  To establish liability under *Monell*, a plaintiff must demonstrate: "(1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  Blandino argues that "all of the aforementioned acts done in violation of [Blandino's] rights is a continuing course of conduct where [Defendants] knowingly or with gross negligence . . . fails to restrain its officers," (*see* Compl. ¶ 58), and that "rather than take true corrective action such as vigorous training and updated policies," Defendants "have made the deliberate calculation that lawsuits and settlements after the fact are a cost of doing business." (Compl. ¶11).  The Complaint lacks any factual allegations regarding the key elements of a *Monell* claim.  Specifically, Blandino fails to present any facts demonstrating that his alleged constitutional deprivation was the result of a custom or practice of LVMPD or that the custom or practice was the "moving force" behind his constitutional deprivation. *Dougherty*, 654 F.3d

at 900–01.  Blandino thus fails to plead enough facts to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 570.  The Court DISMISSES Blandino's *Monell* claim without prejudice.

### F.     Statute of Limitations

In the Motion to Dismiss, Defendants primarily argue that Blandino's claims are barred by the statute of limitations.  "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the state is apparent on the fact of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).  Moreover, "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995).

Plaintiff's claims against Defendants all arise under 42 U.S.C. § 1983 and are thus governed by Nevada's two-year statute of limitations for personal injury actions. *Knox v. Davis*, 260 F.3d 1009, 1012–13 (9th Cir. 2001) (explaining that statute of limitations for § 1983 actions are determined by "the forum state's statute of limitations for personal injury actions"); NRS 11.190(4)(2) (imposing two-year statute of limitations on personal injury actions).  Most of the facts and circumstances giving rise to Blandino's claims occurred more than two years before he filed the Complaint on April 4, 2022.  Plaintiff attempts to circumvent the statute of limitations by arguing that Defendants are engaging in a "continuing course of conduct and pattern" of violating his constitutional rights. (Compl. ¶ 8).  "Under the continuing violation doctrine, a plaintiff's complaint will not be time-barred if the defendant's related wrongful acts continue into the statute of limitations time frame.  As a consequence, the statute of limitations only begins to run . . . upon the last act in a series of related wrongful acts." *Silver State Fair Housing Council, Inc. v. ERGS, Inc.*, 362 F.Supp.2d 1218, 1221 (D. Nev. 2005) (citation

omitted).  However, the Supreme Court has limited the application of the continuing violation doctrine; in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), the Supreme Court held that "discrete . . . acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" because "[e]ach discrete . . . act starts a new clock for filing charges alleging the act."  Although *Morgan* involved a claim under Title VII, its holding has been applied to bar claims under § 1983 as well. *See, e.g.*, *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 747 (9th Cir. 2019) (noting that the Court has "relied on *Morgan* to abrogate the serial acts branch of the continuing violations doctrine for § 1983 claims as well"); *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003) ("Although *Morgan* was a Title VII case . . . we have applied *Morgan* to bar § 1983 claims predicated on discrete time-bard acts[.]").  Because the continuing violation doctrine is necessarily limited, and the facts giving rise to Blandino's claim appear to be discrete acts, the Court finds that any claims arising out of incidents that occurred prior to April 4, 2020, are barred by the statute of limitations.  Accordingly, if Blandino wishes to remedy any claims dismissed without prejudice, he may do so only if those facts underlying those claims occurred during the two years immediately preceding his filing of the Complaint.[2]

## IV.            CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 9), is **GRANTED in part and DENIED in part.**  Plaintiff's claims against Lombardo in his official and individual capacity are **DISMISSED with prejudice.**

///

---

[2] For example, Blandino's claims stemming from the January 3, 2020, incident would be time-barred.  Any incidents occurring from events taking place in 2019 are also time-barred.  Regarding the events that took place in April 2020, Plaintiff does not specify what dates the events taking place in "April 2020" occurred, but instead notes only that he was being "punished by the defendants repeatedly through April 5, 2020." (*Id.* ¶ 42). Construing the Complaint liberally, the Court thus allowed those claims to stand.

**IT IS FURTHER ORDERED** that Plaintiff's Free Exercise, Eighth Amendment, and *Monell* claims are **DISMISSED without prejudice.**

If Plaintiff seeks to amend the claims dismissed without prejudice, Plaintiff must do so within twenty-one (21) days from the date of this Order.  Failure to file an amended complaint within twenty-one (21) days shall result in the Court dismissing this action with prejudice.

**DATED** this __15__ day of August, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT