UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KIM BLANDINO,<br><br>        Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*,<br><br>        Defendants. | Case No.: 2:22-cv-00562-GMN-EJY<br><br>**ORDER DENYING MOTION TO AMEND AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court are Cross-Motions for Summary Judgment filed by Plaintiff Kim Blandino, (ECF Nos. 105, 65), and Defendant LVMPD, (ECF No. 103). The parties filed Reponses and Replies, (ECF Nos. 69, 72, 108, 110, 114, 119). Further pending before the Court are two Objections to the Magistrate Judge's orders, (ECF Nos. 68, 94), a Motion for Sanctions, (ECF No. 78), a Motion to Substitute Names for Doe Defendants, (ECF No. 87), a Motion for Leave to File a Second Amended Complaint, (ECF No. 106), two Motions to Correct Clerical Errors, (ECF Nos. 111, 125), a Motion for Judicial Notice, (ECF No. 112), and a Motion to Request Transcript, (ECF No. 126), all filed by Plaintiff. Defendant also filed a Motion for Leave, (ECF No. 74).

For the reasons discussed below, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motions for Summary Judgment. The Court also DENIES Plaintiff's Objections, Motion for Sanctions, and Motion for Leave to File a Second Amended Complaint. The Court DENIES as moot Plaintiff's Motion to Substitute,[1] first Motion to Correct Clerical Errors, Motion for Judicial Notice, and Motion to Request Transcript.

---

[1] Because this Order finds that Plaintiff's First Amendment right was not violated, his Motion to Substitute the Doe Defendants with the names of the other Officers on duty at the time is MOOT.

Defendant's Motion for Leave and Plaintiff's Second Motion to Correct Clerical Errors are GRANTED.

## I.   BACKGROUND

This case arises from an incident occurring while Plaintiff Kim Blandino was detained at Clark County Detention Center, ("CCDC"), from April 3 to April 5, 2020. (*See generally* First Amended Compl. ("FAC"), ECF No. 38). Plaintiff was arrested and booked into CCDC in May 2019, and spent the next few months bouncing between house arrest and detention. (Booking Voucher, Ex. C to Def.'s Mot. Summ. J. ("MSJ"), ECF No. 103-3); (LVJC Docket, Ex. B to Def.'s MSJ, ECF No. 103-2); (House Arrest Letters, Exs. D–F to Def.'s MSJ, ECF Nos. 103-4, 103-5, 103-6). Plaintiff was found competent at a hearing on April 3, 2020, and was set to be released back to house arrest. (4/3/2020 Min., Ex. L to Def.'s MSJ, ECF No. 103-12).

Plaintiff alleges that the morning of April 3, he told a nurse she was "impatient and rude in accord with [his] free speech and religious practice," and was subsequently locked down in his cell for 48 hours. (FAC at 24); (Pl.'s MSJ at 7, ECF No. 65). The parties dispute whether Blandino received a lockdown, but generally agree on what occurred before the alleged lockdown. Plaintiff received breakfast in his cell, and approximately 20 minutes later, Nurse Alexis provided his medication. (Module Log, Ex. R to Def.'s MSJ, ECF No. 103-18). At 7:30 a.m., Plaintiff submitted a Medical Request stating, "I am being punished because I objected to being given Levthyroczine within 30 minutes of eating," and that the nurse made him choose between not taking the medication or taking it at the improper time. (4/3/2020 Medical Request, Ex. S to Def.'s MSJ, ECF No. 103-19). He also writes that she accused him of having an attitude. (*Id.*). Three hours later, he appeared at a hearing in which it was ordered that he would be returned to house arrest. (4/3/2020 Min., Ex. T to Def.'s MSJ, ECF No. 103-20). The next morning, LVMPD employee Rachelle Williams, formerly known as Rachelle Bruner,

visited Plaintiff to interview him prior to his transition to house arrest. (Visit History, Ex. V to Def.'s MSJ, ECF No. 103-22); (Williams Decl. ¶ 6, Ex. W to Def.'s MSJ, ECF No. 103-23). He was released to house arrest on April 5, 2020, around 11:40 a.m. (Housing Log, Ex. M to Def.'s MSJ, ECF No. 103-13).

After the Court granted two motions to dismiss, the only remaining claim in this case is for First Amendment Retaliation against LVMPD. (*See* Order Granting Second Mot. Dismiss 7:9–10). The parties filed cross motions for summary judgment on this remaining claim.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation marks and citation omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid

1  summary judgment by "relying solely on conclusory allegations unsupported by factual data."
2  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go
3  beyond the assertions and allegations of the pleadings and set forth specific facts by producing
4  competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

5       At summary judgment, a court's function is not to weigh the evidence and determine the
6  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.
7  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn
8  in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is
9  not significantly probative, summary judgment may be granted. *See id.* at 249–50.

10 **III.**       **DISCUSSION**

11      Before the Court resolves the cross-motions for summary judgment, it will evaluate
12 whether Plaintiff should be given leave to file a Second Amended Complaint bringing new
13 claims and defendants into this case.

14      **A. Motion for Leave to File Second Amended Complaint**

15      After Defendant filed its Motion for Summary Judgment, Plaintiff filed a Motion for
16 Leave to File a Second Amended Complaint, ("SAC"), in September 2024. (*See generally* Mot.
17 Leave, ECF No. 106).  On April 5, 2024, this Court granted Defendant's Second Motion to
18 Dismiss. (Order Granting Second Mot. Dismiss, ECF No. 55).  The Order noted that Plaintiff
19 had added new causes of action and defendants without seeking leave to amend, so the Court
20 dismissed the new causes of action and instructed Plaintiff to seek leave to amend if he wished
21 to add new claims. (*Id.* 6:14–7:7).  Five months later, Plaintiff is seeking to amend his
22 Complaint to add the new claims. (Mot. Leave at 2–3).

23      He states that because the statute of limitations on his new claims would soon expire, he
24 filed his proposed SAC under another case number. (*Id.* at 2).  Plaintiff's SAC primarily
25 proposes the addition of new claims and defendants for events that occurred in September and

October 2022, after this case was filed but before Plaintiff filed his First Amended Complaint. (*See generally* Mot. Leave). His third claim concerns the retaliation incident in this case, but adds new defendants Abell, Cardenas, Fernandez, Poloa, and Armendariz, because they aided in his 48-hour lockdown. (SAC at 26–31, Ex. 1 to Mot. Leave).

Discovery in this case closed on July 24, 2024, and the deadline to file dispositive motions was August 30, 2024. (Min. Order, ECF No. 61). The previous scheduling order set the deadline to amend the pleadings and add parties as 90 days before the discovery cut-off date. (Scheduling Order, ECF No. 24). Because Plaintiff is moving to amend the SAC and add parties after the expiration of the Court's deadline, his request is treated as a motion seeking to amend the scheduling order and implicates the "good cause" standard from Rule 16(b) of the Federal Rules of Civil Procedure. *See D.S. v. Clark Cnty. Sch. Dist.*, No. 2:22-cv-00246-JCM-NJK, 2023 WL 5748720, at *2 (D. Nev. May 22, 2023); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. Although prejudice to the opposing party may also be considered, the focus of the inquiry is on the movant's reasons for seeking modification. *Id.* "If that party was not diligent, the inquiry should end." *Id.* The party seeking amendment bears the burden of establishing diligence. *See Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1077 (D. Nev. 2019).

Because Plaintiff's Motion for Leave was filed two months after the close of discovery, and the deadline to amend pleadings was three months before the close of discovery, he also has the burden of demonstrating excusable neglect. *See Branch Banking & Trust Co. v. DMSI, LLC*, 871 F.3d 751, 764–65 (9th Cir. 2017); *see also* Local Rule 26-3. The excusable neglect analysis is guided by factors that include (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Branch Banking*, 871 F.3d at 765.

**1. Plaintiff's Objections to the Magistrate Judge's Denial of his Motions to Stay**

Plaintiff argues that because he has pending objections to the Magistrate Judge's denial of his motions to stay discovery, "discovery is not actually closed." (Reply to Mot. Leave at 2, ECF No. 120). But Plaintiff fails to cite case law for this proposition, and in fact, "[i]t is well-established law that the filing of an objection to a magistrate judge's order on a non-dispositive motion does not automatically stay that order's operation." *Castelan-Gutierrez v. Bodega Latina Corp.*, No. 2:17-cv-01877-JAD-NJK, 2018 WL 4050493, at *1 (D. Nev. Mar. 30, 2018); accord. *Ignite Spirits, Inc. v. Consulting by AR, LLC*, No. 2:21-cv-01590-JCM-EJY, 2022 WL 4112222, at *2 (D. Nev. Aug. 22, 2022); *U.S. Commodity Futures Trading Comm'n v. Banc De Binary, Ltd.*, No. 2:13-cv-992-MMD-VCF, 2015 WL 3454412, at *1 (D. Nev. June 1, 2015); *Garity v. Donahoe*, No. 2:11-cv-01805-RFB-CWH, 2014 WL 4402499, at *2 (D. Nev. Sept. 5, 2014); *Morales v. Allied Building Crafts, Inc.*, No. CV-S-04-1365-LRH-LRL, 2005 WL 8161664, at *2 (D. Nev. Oct. 6, 2005). "It is also axiomatic that the filing of a motion to stay does not impact the obligation to proceed; only an order granting such relief imposes a stay." *PlayUp, Inc. v. Mintas*, 635 F. Supp. 3d 1087, 1093 (D. Nev. 2022). Thus, Plaintiff's objections did not stay discovery.

Furthermore, Plaintiff's Objections fail to demonstrate that the Magistrate Judge's Orders denying his motions to stay discovery were clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a); LR IB 3-1(a); 28 U.S.C. § 636(b)(1)(A); *Laxalt v. McClatchy*, 602 F. Supp. 214, 216 (D. Nev. 1985). A magistrate judge's order is "clearly erroneous" if the court has "a definite and firm conviction that a mistake has been committed." *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *UnitedHealth Grp., Inc. v. United Healthcare, Inc.*, No. 2:14-cv-00224-RCJ, 2014 WL 4635882, at *1 (D. Nev. Sept. 16, 2014) (citation omitted). When reviewing the order, however, the magistrate judge "is afforded

1  broad discretion, which will be overruled only if abused." *Columbia Pictures, Inc. v. Bunnell*,
2  245 F.R.D. 443, 446 (C.D. Cal. 2007) (citation omitted).

3      Plaintiff moved to stay discovery because he filed a Motion for Summary Judgment and
4  a Motion for Sanctions, which could be dispositive of the case. (First Mot. Stay, ECF No. 66);
5  (Second Mot. Stay, ECF No. 76). The Magistrate Judge applied the correct legal standard and
6  determined that his Motion for Summary Judgment was not likely to succeed. (First Order
7  Denying Stay 2:8–10, ECF No. 67). And in the second Order, the Magistrate Judge noted that
8  nothing had changed, and the Plaintiff had not met his burden of establishing that a stay was
9  warranted. (Second Order Denying Stay 1:11–21, ECF No. 84). Because the Magistrate Judge
10 did not fail to apply to relevant case law, and Plaintiff did not establish that a definite error had
11 been committed, the district judge "may not simply substitute its judgment" for that of the
12 magistrate judge. *Grimes v. City and Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir.
13 1991). Plaintiff's Objections are therefore DENIED, and the Court will move on to evaluating
14 whether Plaintiff has met his burden of demonstrating diligence and excusable neglect.

15     **2. Diligence**

16     Plaintiff has failed to meet his burden of demonstrating diligence. To determine
17 diligence, courts examine the time between the moving party's discovery of new facts and its
18 asking leave of the court to file an amended pleading. *See, e.g.*, *Zivkovic v. S. Cal. Edison Co.*,
19 302 F.3d 1080, 1087–88 (9th Cir. 2002); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294–
20 95 (9th Cir. 2000). The events underlying the new facts occurred in September and October of
21 2022, yet Plaintiff's instant motion was filed two years later. Plaintiff is correct that his FAC
22 sought to add similar claims based on the 2022 events, but the Court dismissed them because he
23 did not request leave to amend his FAC with new claims or defendants. (*See* Order Granting
24 Second Mot. Dismiss 7:1–7). However, Plaintiff inexplicably waited another five months after
25 the Court's April order to request leave to amend. Moreover, in the same Order, the Court

warned Plaintiff that he should not move to supplement with a "separate, distinct and new cause of action," which is what he is attempting to do by adding claims based on a traffic stop in September of 2022 and time spent at Clark County Detention Center in September and October 2022. (*Id.* 6:20–23) (quoting *Planned Parenthood of S. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997)).[2]  Plaintiff has therefore not demonstrated diligence in requesting leave to amend.

### 3. Excusable Neglect

Even if Plaintiff had demonstrated diligence, he has not shown excusable neglect. Beginning with the first factor, the Court finds prejudice to Defendant if Plaintiff is allowed to expand the current case to include his new claims, because the current case consists of only one remaining claim of retaliation based on an event during his detention in April 2020.  "A need to reopen discovery and therefore delay proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) (quoting *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).  Discovery would have to be reopened if the Court granted Plaintiff's motion, and doing so would bring this case back to an early stage of proceedings while motions for summary judgment are pending.  "Courts are less inclined to grant a motion for leave to amend that is filed while a motion for summary judgment is pending." *Rocky Mountain Biologicals, Inc. v. Microbix Biosystems, Inc.*, 986 F. Supp. 2d 1187, 1204 (D. Mont. 2013).  Thus, prejudice, the length of delay, and potential impact on the proceedings all weigh against finding excusable neglect.

Plaintiff replies that because he is *pro se*, he requires additional time to review case law. (Reply to Mot. Leave at 6).  He also submits that the did not know Officers Cardenas and Abell

---

[2] Allowing amendment as to Plaintiff's third SAC claim adding defendants Abell, Cardenas, Fernandez, Poloa, and Armendariz, would be futile.  As explained below in Section B, the addition of these defendants does not change the Court's analysis or decision on summary judgment.

were on duty until July 13, 2024, and that he timely amended his previous complaints when granted leave to do so. (*Id.* at 6–7). But Plaintiff could have filed a Motion for Leave to Supplement at any time after the 2022 events occurred, and he did not need to wait for the Court's ruling on pending motions to dismiss. And while the Court is sympathetic that *pro se* plaintiffs require additional time to work on their claims and review case law, that does not explain why Plaintiff waited an additional five months after the Court instructed him to file a Motion to Supplement, to file the instant motion.

Lastly, the parties point out that Plaintiff has already filed this SAC under another case number, 2:24-cv-01727-CDS-BNW, which indicates less prejudice to Plaintiff if his Motion for Leave is denied. *See Sharkey v. Duke*, No. 2:23-cv-00449-CDS-DJA, 2024 WL 3875803, at *3 (D. Nev. Aug. 19, 2024) (denying a plaintiff's motion to amend where "Plaintiff has filed a new complaint alleging the claims he seeks to add here."). Judge Silva ordered Plaintiff to show cause as to why his new case should not be dismissed as duplicative of this case, and Plaintiff responded that he added new claims with a 2024 statute of limitations. For the reasons above, and because Plaintiff failed to demonstrate good cause and excusable neglect for filing his Motion for Leave months after the deadline, the Court DENIES the motion.

**B. Motion for Sanctions**

Next, Plaintiff moves for Rule 11 sanctions based on two assertions made by the LVMPD in their Response to his Motion for Summary Judgment. (Mot. Sanctions at 1, ECF No. 78). First, he asserts that counsel Ryan Daniels committed perjury in his declaration because he wrote that "LVMPD had not had the opportunity to scrutinize [Plaintiff's] evidence through written discovery or deposition." (*Id.* at 2). Plaintiff argues that he had not received a call from LVMPD counsel stating that they wished to review the log he created while at CCDC, and that LVMPD had multiple opportunities to depose him. (*Id.* at 3–4). Second, Plaintiff takes issue with the Response brief noting "it is nearly impossible that Blandino was locked down for

48 hours . . . because on April 4, 2022, at 9:51 a.m., he received a visitor. (*Id.* at 4). Plaintiff points out that the visitor was, in fact, an LVMPD employee. (*Id.* at 5). He requests judgment be entered in his favor. (*Id.* at 10).

LVMPD filed a Motion for Leave to file a Sur-reply addressing Plaintiff's assertion that it made fraudulent statements, (ECF No. 74), which the Court GRANTS. First, LVMPD argues that Daniels' statement was not fraud because Plaintiff has no way to determining whether LVMPD had the opportunity to properly scrutinize the evidence he improperly attached for the first time to his Motion for Summary Judgment, and because Rule 37(c)(1)'s self-executing sanction meant they did not have to *take* the opportunity. (Sur-Reply 2:12–20). And second, it was not fraudulent to state that Plaintiff received a visitor when an LVMPD employee visited him on April 4. (*Id.* 2:21–24). The Court agrees that neither of these representations require sanctions and DENIES Plaintiff's motion.

**C. Cross Motions for Summary Judgment**

Because Plaintiff's Motion to Amend has been denied, the only remaining claim in this case is for retaliation against LVMPD. Plaintiff alleges that LVMPD failed to maintain policies or provide training that would prevent employees from retaliating against him for exercising his rights to free speech and religion. (FAC ¶ 54). The Court begins with Defendant's Motion for Summary Judgment.

"[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Further, Plaintiff must establish "(1) that [he] possessed a constitutional right of which he was deprived; (2) that [LVMPD] had a policy; (3) that this policy 'amounts to deliberate indifference' to [Blandino's] constitutional right; and

(4) that the policy is the 'moving force behind the constitutional violation.'" *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (alteration in original).

Plaintiff alleges that his First Amendment rights were violated when he was locked down due to his statement to the nurse that she was "impatient and rude." There is no genuine dispute about the statement Plaintiff made to his LVMPD nurse, and thus the Court must determine whether, as a matter of law, his conduct was protected. To demonstrate retaliation in violation of the First Amendment in the prison context, a plaintiff must show "(1) an assertion that a state actor took some adverse action against an inmate, (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005)). Because the Court finds that Plaintiff did not engage in protected conduct, it does not reach Defendant's other arguments, such as that Plaintiff was never actually placed in a 48-hour lockdown.

Defendant argues that Plaintiff's claim fails because he was not deprived of a constitutional right. (Def.'s MSJ 9:21–12:14). It contends that while some speech is protected in the prison context, such as filing grievances, other interactions between prison staff and those who are incarcerated, such as "put-downs" and "verbal challenges or rantings," are not. (*Id.* 9:21–11:19). Defendant further asserts that Plaintiff's statement to the nurse was a level 1 rule violation at CCDC because it is "[v]erbally abusive or disrespectful towards staff or other inmates." (*Id.* 11:20–22) (citing CCDC Policies at 18, Ex. N to Def.'s MSJ, ECF No. 103-14).

In his Response, Plaintiff asserts that Defendant is "estopped and precluded" from making the argument that his speech was not protected, because the Court found that his claim survived Defendant's Motion to Dismiss. (Resp. to Def.'s MSJ at 5, ECF No. 110). And citing *Brodheim*, he contends that "disrespectful language is itself protected activity under the First

Amendment." (*Id.*).  Finally, he argues that he was not being disrespectful, but rather "respectfully disagreeing with rudeness and impatience with Christian love to strike the conscience." (*Id.*).

To address Plaintiff's first argument, surviving a motion to dismiss does not mean that Defendant cannot raise this argument at the motion for summary judgment stage. *See, e.g.*, *Peck v. Hinchey*, 2017 WL 2929464, *5 n.5 (D. Ariz. 2017) ("Plaintiffs misapply the 'law of the case' doctrine by arguing that this Court's analysis under the motion to dismiss standard must result in the same outcome at the summary judgment stage.  The denial of motions to dismiss do not constitute law of the case for the purpose of summary judgment.").  Further, Defendant LVMPD did not make protected speech argument at the motion to dismiss stage, but rather argued that his retaliation claim was untimely. (*See generally* First Mot. Dismiss, ECF No. 9).  Because Defendant has not yet made the argument that Plaintiff's speech is not protected, the Court has not yet ruled on it.  Thus, while the Court is bound to its decision that Plaintiff plausibly and timely alleged a retaliation claim, before discovery commenced, the Court did not decide the *merits* of his claim. *See Andrews Farms v. Calcot, Ltd.*, 693 F. Supp. 2d 1154, 1166 (E.D. Cal. 2010) ("A denial of a motion to dismiss establishes only that the claims are plausible; it does not establish the merits of the claim.").

The Court now moves on to addressing the Ninth Circuit's *Brodheim* decision, which the Court cited in its previous Order finding the retaliation claim sufficiently pled.  Plaintiff argues that *Brodheim* stands for the proposition that all disrespectful language is protected, (Resp. to Def.'s MSJ at 5), but the actual holding from the court is that "disrespectful language *in a prisoner's grievance* is itself protected activity under the First Amendment." *Brodheim*, 584 F.3d at 1271.  More recently, the Ninth Circuit has clarified that "the holding of *Brodheim* relates only to the narrow category of cases dealing with prison grievances." *Richey v. Dahne*, 733 F. App'x 881, 884 (9th Cir. 2018).  "We reasoned that grievances were easy to insulate

from other prisoners and from those prison officials who are the target of the grievance, so that disrespectful language in a grievance did not raise any substantial security concern." *Id.* at 883.

In this case, Plaintiff's comment to his nurse that she was "impatient and rude," was not included in a written grievance, or in his medical request form, but said to her directly. And LVMPD cited many cases, both in this district and beyond, in which courts have found that verbal confrontations and put-downs by inmates are not protected when they are not an attempt to assert a prison grievance. (Def.'s MSJ 10:19–11:19) (citing cases). The Court has reviewed these cases and finds them persuasive. *See also Rodriguez v. Eulers*, 2020 WL 7388162, at *2 (E.D. Cal. Dec. 16, 2020) ("While the First Amendment protects inmates from being retaliated against for protected conduct such as filing administrative appeals, it does not offer protection for hurling insults at correctional officers."); *Ruiz v. Woodfill*, 2020 WL 3254136, at *4 (E.D. Cal. June 16, 2020) ("[V]erbal insults are not protected under the First Amendment."). The Court thus **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## IV.     CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 103), is **GRANTED.** The Court kindly directs the Clerk of Court to close the case and enter judgment for Defendant.

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Summary Judgment, (ECF Nos. 105, 65), are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Objections, (ECF Nos. 68, 94), Motion for Sanctions, (ECF No. 78), and Motion for Leave, (ECF No. 106), are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Substitute, (ECF No. 87), first Motion to Correct Clerical Error, (ECF No. 111), and Motion to Request Transcript, (ECF No. 126), are **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion to Correct Clerical Error is **GRANTED**. The Clerk of Court is kindly requested to remove the "Esq." designation from Plaintiff's name on the docket entry at ECF No. 123.

**IT IS FURTHER ORDERED** that Defendant's Motion to Leave, (ECF No. 74), is **GRANTED**.

**DATED** this __9__ day of December, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT